MARY T. F. NESTER *vs.* SCHOOL COMMITTEE OF FALL RIVER & another (and three companion cases[1]).

Bristol.    May 29, 1945. — September 14, 1945.

Present: FIELD, C.J., DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*School and School Committee.*

As applied to a substitute public school teacher, the phrase "served ... for the three previous consecutive school years" in G. L. (Ter. Ed.) c. 71, § 41, signifies a continuity of service for that period and is not satisfied by intermittent and irregular service.

Neither a substitute teacher who served in the public schools of a municipality for substantial periods in each of three consecutive school years, but for periods totalling only about one half a normal school year in one of such three years, nor another substitute teacher who served continuously throughout the first two of such years and during the third year until her resignation was tendered and accepted more than a month before its end, had served "for the three previous consecutive school years" within G. L. (Ter. Ed.) c. 71, § 41, when, in accordance with a vote of the school committee, she was employed full time for the entire fourth year; and neither teacher had acquired tenure under the statute as a teacher employed to serve at discretion.

FOUR PETITIONS for writs of mandamus, filed in the Superior Court on October 11, 1944.

---

[1] The companion cases are by Olga T. Alderman, Madeline N. Murther and Clara L. Driscoll against the same respondents.

The cases were reported by *Sullivan*, J.

In this court the cases were submitted on briefs.

*T. C. Crowther*, for the petitioners.

*G. L. Sisson*, Corporation Counsel, for the respondents.

SPALDING, J.   These are four petitions for writs of mandamus by which each petitioner seeks to compel the respondents to reinstate her as a teacher in the public schools of Fall River on the ground that she had acquired the status of a teacher employed "at discretion" within G. L. (Ter. Ed.) c. 71, § 41, and was dismissed in violation of the provisions of G. L. (Ter. Ed.) c. 71, § 42, as appearing in St. 1934, c. 123.

There is an agreement as to all the material facts, and the cases upon request of the parties were reported to this court, without decision, pursuant to G.`L. (Ter. Ed.) c. 231, § 111. *Moore* v. *Election Commissioners of Cambridge*, 309 Mass. 303, 305. The statement of agreed facts in each case provided that it was to supplement the facts admitted in the pleadings. Contrary to the contention of the respondents, although the law until recently was otherwise (*Lowry* v. *Commissioner of Agriculture*, 302 Mass. 111, 112), the untraversed affirmative allegations in the answer in each case are not to be taken as true, but in accordance with St. 1943, c. 374, § 2, amending G. L. (Ter. Ed.) c. 249, § 5, "shall be considered to be denied by the petitioner without a replication," with exceptions not here material.

Each of the petitioners served as a "substitute," teaching regular classes in the public schools of Fall River during the school years 1940–1941 and 1941–1942 for the number of days set forth in the footnote.[1] From September 9, 1942, to October 5, 1942, the petitioners served as substitutes, teaching regular classes for periods ranging from nine and one half days to seventeen and one half days.[2] On

|  | | | | | | 1940-1941 | 1941-1942 |
|---|---|---|---|---|---|---|---|
| [1] Nester | . | . | . | . | . | 93½ days | 152½ days |
| Driscoll | . | . | . | . | . | 127½ days | 91   days |
| Murther | . | . | . | . | . | 104   days | 122½ days |
| Alderman | . | . | . | . | . | 182   days | 178   days |

[2] These assignments like those for 1940–1941 and 1941–1942 were by virtue of an oral direction of the superintendent of schools pursuant to art. 4, § 3, of the rules of the school committee which provides that the superintendent

October 5, 1942, the school committee voted that certain persons, including the petitioners, be "assigned" to elementary schools for "two and a half days each regular school week," and the petitioners were assigned in accordance with this vote. On November 2, 1942, the school committee rescinded this vote and voted that the petitioners and one other person be "assigned for full-time employment" to elementary schools "until further notice." The superintendent accordingly assigned each of the petitioners to two elementary schools and they (with the exception of Mrs. Alderman, who served until her resignation on May 25, 1943) continued in full-time employment at the schools until June 30, 1943, the end of the school year. On August 30, 1943, the school committee, at the request of the petitioner Alderman, voted that she be "reinstated to her former position."

On September 15, 1943, the school committee voted that the "four assistants who were assigned to schools last year be reassigned by the superintendent." Pursuant to assignments by the superintendent in accordance with this vote, each of the petitioners was employed full time for the entire school year of 1943–1944. On August 9, 1944, the petitioners, in accordance with a vote of the school committee on August 7, 1944, were notified that their assignments ended with the close of the school year on June 30, 1944, and would "not be renewed for the school year, upon the failure of recommendation by the superintendent." The petitioners were not thereafter employed in the public schools of Fall River although there was work to be done of the kind previously performed by them.

It was agreed that none of the petitioners has ever "been guilty of any acts of inefficiency, incapacity, conduct unbecoming a teacher, or insubordination," and it was further agreed, except as to the petitioner Alderman, that none was guilty of "other acts or conduct amounting legally to good cause for dismissal, removal or discharge," and that

---

"shall supply approved substitutes for teachers temporarily absent and shall report such assignments to the committee at its next meeting." It is agreed that the assignments were "duly reported to the school committee."

each "has always performed her duties to the satisfaction of the school authorities." "At least one hundred eighty days constitute a normal school year in Fall River."

The question presented for decision with respect to each petitioner is whether she has acquired the status of a teacher employed "at . . . discretion" within the meaning of G. L. (Ter. Ed.) c. 71, § 41. If she acquired such a status she could be dismissed only in accordance with G. L. (Ter. Ed.) c. 71, § 42, as amended, the provisions of which were not observed. Section 41, in so far as here material, provides that "Every school committee, except in Boston, in electing a teacher . . . who has served in its public schools for the three previous consecutive school years . . . shall employ him to serve at its discretion." The terms of this section are mandatory, and a school committee has no option to elect the teachers there described except "to serve at its discretion." *Paquette* v. *Fall River*, 278 Mass. 172, 174. *Frye* v. *School Committee of Leicester*, 300 Mass. 537, 538. As we observed in the *Frye* case, the purpose of this section "is to provide some degree of protection for the tenure of teachers who have served a probationary term of three consecutive school years and who are continued in employment thereafter" (pages 538–539). In that case, which is strongly relied upon by the petitioners, it was held that continuous employment of a substantial character of a part-time teacher could be counted in computing the probationary period; that the statute made no distinction between part-time and full-time teachers; and that the sole test was service "for the three previous consecutive school years" (page 540). We stated that we were not called upon "to consider what might be the bearing of long or repeated absences from work or of employment of a merely casual nature."

Since it does not affect the result, we assume, without intimation or decision, that a substitute[1] teacher who has

---

[1] See, however, *Gausemel* v. *St. Paul*, 207 Minn. 555; *Schulz* v. *State Board of Education*, 132 N. J. L. 345; and *Schroeder* v. *School Directors of Milwaukee*, 225 Wis. 444, holding that the period served by a substitute teacher could not be counted as part of the probationary period necessary for acquiring tenure. Compare *McSherry* v. *St. Paul*, 202 Minn. 102.

been continuously employed for the three year probation-ary period specified in § 41 acquires the status of tenure at discretion therein provided when elected to serve for the fourth year. But we are of opinion that the phrase "served . . . for the three previous consecutive school years" in § 41 signifies a continuity of service for that period and is not satisfied by intermittent and irregular service as a sub-stitute. To hold otherwise might very well lead to the result that a substitute teacher who had served for a brief period or even for a few days in each of three consecutive years would acquire tenure upon election by a school committee for the fourth year. We cannot believe that the Legislature intended that tenure could be acquired in this manner. We reach this conclusion apart from § 4 (a) of art. 2 of the rules of the school committee of Fall River, which provides in part that "No year of the probationary term shall be reckoned as a year in which a teacher shall have been actu-ally employed less than thirty school weeks." It is therefore not necessary to determine the validity of this rule. It follows that the petitioners Nester, Driscoll and Murther are not entitled to reinstatement since, by reason of the fact that they were not regularly and continuously employed for the school years 1940–1941 and 1941–1942, they did not serve the necessary probationary period entitling them to tenure. It is true that each served for a substantial period of time in each of those years, but it was considerably less [1] than the period comprising a normal school year and does not in our opinion constitute the regular and continuous employment that the statute contemplates.

The petitioner Alderman, however, is in a somewhat different position. For the school years 1940–1941 and 1941–1942 she served for one hundred eighty-two and one hundred seventy-eight days respectively. In view of the fact that one hundred eighty days constitute a normal school year, her service for these years can be said to be regular

---

[1] As indicated in the footnote on page 539, the petitioners Murther and Nester served for one hundred four and ninety-three and one half days re-spectively during the school year 1940–1941 and the petitioner Driscoll served for ninety-one days during the school year 1941–1942 — periods only slightly in excess of one half of a school year.

and continuous. However, in the third year, 1942–1943, she was employed as a full-time substitute teacher until May 25, 1943, at which time she terminated her service by a resignation which was accepted on that date. The tender and acceptance of this resignation, more than a month before the end of the school year, interrupted the probationary period required by the statute and deprived the petitioner of its protection. This result is supported by decisions in other jurisdictions in construing statutes similar to ours. *Merman* v. *Calistoga Joint Union High School District*, 5 Cal. (2d) 438. *Chalmers* v. *State Board of Education*, 11 N. J. Misc. 781. *Ahrensfield* v. *State Board of Education of New Jersey*, 124 N. J. L. 231.

It has been urged by the respondents that both the governing statutes (see G. L. [Ter. Ed.] c. 71, §§ 38, 41) and the rules of the school committee require that in order to acquire tenure a teacher must have been elected to her position by the committee for each of the three years constituting the probationary period, and that this procedure was not followed in the cases before us. But in view of the conclusions we have reached it is not necessary to decide these questions.

*Petitions dismissed.*