WAYNE SHERMAN *vs.* SCHOOL COMMITTEE OF WHITMAN & others.[1] No. 87-356. May 6, 1988. *School and School Committee,* Tenure of personnel, Termination of employment. *Damages,* Mitigation.

First discharged in a "reduction in force" (RIF), then rehired, then fired again, Sherman correctly claims that he was entitled, under *Ripley* v. *School Comm. of Norwood*, 389 Mass. 610, 612-616 (1983), to the status of a tenured public school teacher (see G. L. c. 71, § 41) at the time of his second discharge. A judge of the Superior Court determined that the Whitman school committee, in dismissing Sherman, violated G. L. c. 71, § 42, by failing to furnish Sherman with any statutory ground for discharge. Accordingly, the judge ordered Sherman's rèinstatement and $105,854 in back pay.

*Facts.* We rehearse salient facts found by the trial judge, which we leave undisturbed; they have ample support in the record. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). See *Breslin* v. *School Comm. of Quincy*, 20 Mass. App. Ct. 74, 76 (1985). In April, 1981, citing declining enrollment and budgetary constraints imposed by Proposition 2½ (St. 1980, c. 580), the school committee announced a RIF of thirty-nine tenured teachers. The committee gave those teachers a choice of a one-year leave of absence subject to recall or participation in a hearing which might result in immediate dismissal.[2]

---

[1] The superintendent of the Whitman public schools, and the principal of Whitman West Middle School.

[2] By reason of the fifth sentence of G. L. c. 71, § 42, the school committee had no obligation to afford a hearing to a teacher discharged because of a decline in school enrollment, *Milne* v. *School Comm. of Manchester*, 381 Mass. 581, 582 (1980), or because of budgetary considerations, *Boston Teachers Local 66* v. *School Comm. of Boston*, 386 Mass. 197, 215-216 (1982).

Sherman opted for a hearing and on June 16, 1981, he was dismissed. In October, 1981, he was rehired as a fifth grade teacher in another elementary school in Whitman. On April 13, 1982, the committee voted not to renew Sherman's contract and so notified him by a letter dated April 14, 1982, which explained that he was not to be retained because several tenured teachers on leave were expected to return. Subsequently the school committee hired three non-tenured teachers to fill vacancies in the system. Sherman was certified to teach in the vacant positions.

1. *Sherman's status.* When the school committee dismissed Sherman for the second time in April, 1982, it obviously thought of him as not having tenure. That is why the committee took pains to notify Sherman on April 14th and expressed the severance in terms of nonrenewal. General Laws c. 71, § 41, as amended by St. 1973, c. 847, § 6, requires that a teacher without tenure "shall be notified in writing on or before April Fifteenth whenever such person is not to be employed for the following school year." On the authority of *Ripley* v. *School Comm. of Norwood*, 389 Mass. at 612-616 (decided some fourteen months after the committee acted in the instant case), the trial judge ruled that Sherman's status was that of a tenured teacher. The school committee now concedes Sherman's status in April, 1982, was that of a tenured teacher.

2. *Validity of discharge.* Nevertheless, the school committee argues, it was empowered to discharge Sherman without charges and a hearing upon grounds of declining enrollment and budgetary constraints. G. L. c. 71, § 42. The cases have warned that the enrollment/budget grounds may not be advanced as a subterfuge. See *Milne* v. *School Comm. of Manchester*, 381 Mass. 581, 583 n.3 (1980); *Boston Teachers Local 66* v. *School Comm. of Boston,* 386 Mass. 197, 216 (1982); *Martin* v. *School Comm. of Natick,* 395 Mass. 461, 466 (1985). Significantly, the letter of April 14, 1982, dismissing Sherman, cited no fiscal constraint or pupil count as a reason. Non-tenured teachers were hired for positions which Sherman was qualified to fill, a circumstance inconsistent with having to pare down the teaching force. It is of no consequence that two vacancies did not occur until the end of 1982; under the governing collective bargaining agreement between the school committee and the teachers, personnel laid off in the twelve months before a vacancy occurred were to receive priority consideration in filling the vacancy. Contrast *Coco* v. *School Comm. of Boylston*, 392 Mass. 221, 226-227 (1984). The committee advances as fitting within the fifth sentence of G. L. c. 71, § 42, the discharge of a tenured teacher to make room for tenured teachers returning from leave. Neither the statute nor the cases contemplate anything so susceptible to manipulation by school committees.

3. *Election of remedy.* At the time of the 1981 RIF, Sherman invoked a grievance procedure to contest the evaluation made of him for purposes of the RIF. That process did not bar him, after he was rehired, from challenging his second discharge on the ground that he had not been informed of statutory grounds (inefficiency, incapacity, conduct unbecoming a teacher, insubor-

dination, or other good cause) or been afforded notice and hearing as required under G. L. c. 71, § 42. See *Fogarty* v. *School Comm. of Palmer,* 15 Mass. App. Ct. 1008, 1009 (1983).

4. *Mitigation of damages.* The committee protests that Sherman failed to mitigate his damages as required by *Black* v. *School Comm. of Malden,* 369 Mass. 657, 661-662 (1976). The judge assessed damages in accordance with the guidelines in *Farrington* v. *School Comm. of Cambridge,* 9 Mass. App. Ct. 474, 476 (1980), i.e., the amount of salary of which he was deprived, reduced by the amount he was able to earn in mitigation of damages. See *Ryan* v. *Superintendent of Schs. of Quincy,* 374 Mass. 670, 673-674 (1978). The committee cites Sherman's spurning of an offer of reinstatement as a failure to mitigate. An employee's rejection of an unconditional offer of reinstatement may terminate an employer's liability for back pay. See *Consolidated Freightways* v. *N.L.R.B.,* 669 F.2d 790, 795-797 (D.C. Cir. 1981). The committee's offer of reinstatement, however, contained onerous conditions: withdrawal of his lawsuit, forgoing back pay, surrender of his seniority, and acceptance of a nontenured position. Sherman was entitled to reject the poisoned apple. Contrast *N.L.R.B.* v. *Charles H. McCauley Associates, Inc.,* 657 F.2d 685, 688-689 (5th Cir. 1981). Sherman's efforts to find a teaching job, the judge could and did conclude on the evidence, were reasonable. The burden of establishing that they were not lay on the committee. See *Buckley Nursing Home, Inc.* v. *Massachusetts Commn. Against Discrimination,* 20 Mass. App. Ct. 172, 186 n.16 (1985).

As the plaintiff's civil rights claims (G. L. c. 12, §§ 11H and 11I, and 42 U.S.C. § 1983 [1982]) were not the basis of the relief ordered and Sherman is content with that relief, we need not consider them.

The judgment shall be modified to provide for damages through the date of the rescript. As so modified, the judgment is affirmed. The trial judge, in his careful and lucid memorandum of decision, wrote that he would hold a separate hearing concerning the attorney's fees and costs to which the plaintiff was entitled under G. L. c. 71, § 43B. That shall include fees and costs incurred in this appeal, within the limit of the total amount allowable under § 43B.

*So ordered.*

*Regina Williams Tate* for the defendants.
*J. Russell Hodgdon* for the plaintiff.